**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

TAMPA LIFE PLAN VILLAGE, INC.,[1]                    Case No.: 8:24-bk-01885-RCT
                                                     Chapter 11

      Debtor.

_____/

## DEBTOR'S MOTION TO APPROVE RESIDENT TRANSITION PLAN

Tampa Life Plan Village, Inc. ("TLPV"), as debtor and debtor-in-possession (the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11 Case" or "Case"), by and through undersigned counsel, hereby files this motion (the "Motion") for entry of order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") approving the Debtor's transition plan for current residents proposed herein (the "Transition Plan"), through which Transition Plan the Debtor will assist current residents to find new living arrangements in substantially similar retirement communities and provide residents with substantial financial assistance to relocate.

## PRELIMINARY STATEMENT

1. The Debtor, a continuing care retirement community ("CCRC") known as Unisen Senior Living, is currently at a less than 25% occupancy rate, while still delivering services and amenities to residents that the current occupancy rate simply cannot sustain. The Debtor seeks to sell the underlying real property of the Debtor through this bankruptcy and believes that a section 363 sale free and clear of all liens and encumbrances, in combination with the resident Transition

---

[1] The address of the Debtor in this Chapter 11 Case is 12401 North 22nd Street, Tampa, FL 33612 and its last four digits of its federal tax identification number is 9118.

Plan proposed herein, is in the best interest of the estate, current residents, and the Debtor's creditors, and will yield the highest and best value for the property. The buyer that ultimately purchases the Debtor's assets will likely repurpose the real property to either unrestricted residential use or as student housing.

2.      Given the forthcoming sale and the fact that the Debtor cannot remain in business and continue providing the amenities and services that are key to the wellbeing of residents, the Debtor proposes not only to assist all current residents to relocate to other similar retirement communities/assisted living communities, but to provide residents with substantial financial assistance in order to effectuate their relocation. The Secured Lenders, represented by UMB Bank, N.A. in its capacity as Trustee who will also serve as the DIP Lender, have agreed to fund from the proposed DIP Facility the amounts described herein for use in the Debtor's relocation efforts on behalf of the residents.[2]   The Debtor believes the proposed Transition Plan will ensure that residents are relocated to a community that fits their needs while also maximizing the value to creditors in this case through a sale process.

## JURISDICTION

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105 and 363(b) of the Bankruptcy Code.

6.      On April 5, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[2] The Secured Lenders have also funded the payment of the prepetition professional fees and expenses of Debtor's counsel with non-Debtor funds.

7.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

8.      In further support of this Motion, the Debtor relies upon the *Declaration of Ronald Shuck in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration").[3]

## THE PROPOSED TRANSITION PLAN

9.      As of the Petition Date, 106 units of the 491 Debtor units are occupied.  The residents can be classified into three different categories: 1) Life Care Contract Residents who paid an entrance fee directly to the Debtor after 2020 when the Debtor was created and took over a predecessor entity (the "Entrance Fee Residents"); 2) Life Care Contract Residents who paid an entrance fee to the Debtor's predecessor (the "Legacy Residents"); and 3) residents who simply pay monthly rent to reside in the Community (the "Rental Residents").  Legacy Residents total 53 residents, Entrance Fee Residents total 44 residents, and Rental Residents total 9 residents.

10.     The Debtor proposes to hold a Relocation Fair on Wednesday, April 10th from 1:00 – 4:30 pm in the Debtor's Auditorium. During this event, other retirement communities and organizations will be invited to provide residents with an overview of their campuses and amenities and to answer resident's questions. These organizations have agreed to provide transportation for residents to tour their locations, offer residents an opportunity to try out their food, allow residents to attend activities, and introduce residents to staff and the new communities.

11.     In addition, aside from funneling Debtor resources and staff to help residents elect a new residence that is both  financially feasible and the equivalent to their current unit, the Debtor,

---

[3] The Debtor intends to file all of the First Day Pleadings no later than three (3) days following the Petition Date.

with the consent of the Secured Lenders/DIP Lender, proposes to provide the following financial incentives to residents based on their status:

(i)  Entrance Fee Residents will be offered $25,000.00 each to assist and cover the costs of relocating to a new community.  In addition, the Debtor proposes to return the remaining unamortized entrance fee paid by the Entrance Fee Residents based on their move-out date;

(ii) Legacy Residents will be offered $30,000.00 each to assist and cover the costs of relocating to a new community; and

(iii) Rental Residents will be offered $10,000.00 each to assist and cover the costs of relocating to a new community.

12.    Continuing to reside in the community will not be an option for any of the residents as the Debtor's operations as a CCRC will stop in the coming months. Keeping the Debtor in operation is simply not feasible in light of its significant operating deficit and lack of funding go forward.

**RELIEF REQUESTED**

13.    Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g., In re 160 Royal Palm, LLC*, 600 B.R. 119, 129 (S.D. Fla. 2019) (courts use the business judgment test to evaluate proposed actions under section 363(b)(1); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of*

4

*Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*).

14.    The demonstration of a valid business justification by the Debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15.    Here, the proposed payments to residents under the Transition Plan are reasonable, appropriate and within the Debtor's sound business judgment under the circumstances because the Resident Plan is designed to facilitate the relocation of residents with the least amount of disruption possible and through substantial financial incentives, which will ultimately maximize the value to be received by the Debtor's estate through its contemplated 363 bankruptcy sale process.

16.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *see also In re Food Barn Stores, Inc.*, 101 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore appropriate in the context of bankruptcy

transactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *Integrated Resources*, 147 B.R. at 659 (Bid Procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

17.    Residents cannot remain in the community leading up to and after a section 363 sale is consummated as the Debtor cannot continue operating as a CCRC. As noted, the purpose of the proposed Transition Plan is to facilitate the relocation of residents with the least amount of disruption possible and through substantial financial incentives.  The payments proposed to be made to residents by the Debtor under the Transition Plan, and funded by the DIP Lender, are in the best interest of the Debtor, its estate, the residents, and creditors, and a sound exercise of the Debtor's business judgment under the circumstances herein.

75831740;1

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above and in the First Day Declaration, the Debtor respectfully requests the Court enter the Order substantially in the form attached hereto as **<u>Exhibit A</u>**: (i) approving the Transition Plan proposed herein and (ii) granting such other and further relief as requested herein or as the Court otherwise deems necessary and appropriate.

Dated: April 5, 2024

Respectfully submitted,

AKERMAN LLP

By: */s/ Steven R. Wirth*
Steven R. Wirth, Esquire
Florida Bar Number: 170380
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone: (813) 209.5093
Email. steven.wirth@akerman.com

Andrea S. Hartley, Esq.
Florida Bar No. 864234
Three Brickell City Centre
95 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Phone: (305) 982.5682
Email: andrea.hartley@akerman.com

*Proposed Counsel for Debtor and Debtor-in Possession*

75831740;1

## **EXHIBIT A**

### **PROPOSED ORDER**

75831740;1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

TAMPA LIFE PLAN VILLAGE, INC.,[1]                    Case No.: 8:24-bk-01885-RCT
                                                       Chapter 11

          Debtor.

_____/


**ORDER GRANTING DEBTOR'S**
**MOTION TO APPROVE RESIDENT TRANSITION PLAN**

        Upon the Motion (the "Motion")[2] of Tampa Life Plan Village, Inc. ("TLPV"), as debtor

and debtor-in-possession (the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11

---

[1] The address of the Debtor in this Chapter 11 Case is 12401 North 22nd Street, Tampa, FL 33612 and its last four digits of its federal tax identification number is 9118.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion or the First Day Declaration, as applicable.

75778885;1

Case" or "Case"), for entry of an Order approving the Debtor's Transition Plan, which came before

the Court for hearing on _____, 2024.

     The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28

U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this

Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper

before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in

the best interests of the Debtor, its estate, its creditors, the residents, and other parties in interest;

(v) notice of the Motion and the hearing were appropriate under the circumstances and no other

notice need be provided; and (vi) upon review of the record before the Court, including the legal

and factual bases set forth in the Motion and the statements made by counsel at the hearing, good

and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is hereby

     **ORDERED** that:

     1.     The Motion is **GRANTED**.

     2.     The Debtor's Transition Plan set forth in the Motion is approved in all respects.

     3.     The Debtor is authorized and directed to take all actions necessary and appropriate

to implement and effectuate the Transition Plan.

     4.     All payments authorized by this Order may be made subject to the requirements of

any order(s) of this Court approving postpetition senior secured financing, use of cash collateral,

and related relief then in effect, and solely to the extent in compliance with the Budget (as defined

in such order).

     5.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order and the Transition

Plan.

75778885;1